380 So.2d 1273 (1980)
In the Matter of the ESTATE of Greta Meador McKELLAR, Deceased, Tiny Bell, Administratrix.
Mrs. Lucille JAY, Mr. Larry Jay, Miss Jo Jo Brewer, Mrs. Luciane Brewer, and Miss Marie Brewer
v.
Nell THRASH and Jacqueline Field.
No. 51765.
Supreme Court of Mississippi.
March 12, 1980.
Hamilton & Williamson, John W. (Jay) Boling, Meridian, for appellants.
Self, Jordan & Jones, Robert D. Jones, Meridian, for appellees.
Before PATTERSON, C.J., and BROOM and COFER, JJ.
BROOM, Justice, for the Court:
Execution and attestation of a purported Last Will and Testament are at issue in this case appealed from the Chancery Court of Lauderdale County. In that court Tiny Bell filed for probate a document said to be Greta Meador McKellar's true Last Will and Testament. The matter was contested and after hearing testimony the lower court *1274 found that the document was statutorily deficient and therefore invalid. From the chancellor's refusal to admit the document to probate, Tiny Bell, administratrix, Lucille Jay, Larry Jay, Jo Jo Brewer, Luciana Brewer and Marie Brewer bring their appeal. We affirm.
The purported Last Will and Testament of Greta Meador McKellar (McKellar herein) is a five-page instrument dated August 23, 1977. McKellar died March 29, 1979. Her purported Will, completely written out in her handwriting, was designated in the original proceedings as her "holographic" Will but on amendment of the pleadings became designated as a "statutory" attested Will. According to the document at issue, several beneficiaries of McKellar's purported Will were persons not her heirs at law. Her heirs at law were stated to be Tiny Bell, named by the lower court as her administratrix, Nell Thrash and Jacqueline Field.
First paragraph of the purported Will is in the following language:
"To Whom it May Concern
I, Greta Meador McKellar, being of sound mind and body, declare this to be my last Will and testimony [sic] concerning my real and personal property...."
The document consists of five pages (four sheets of paper), the last of which is on the reverse side of page 1. Near the bottom of the last page, being page No. 5, is the following:
"The following have witness [sic] my writing of this five page will 
Luciana Brewer
Lucille Jay
Douglas Watkins."
Nowhere on the instrument except in the opening paragraph does McKellar's purported signature appear.
Testimony adduced to the lower court included the three people whose names appear at the end of the document as witnesses. Douglas Watkins testified that she took the deceased McKellar to the hospital, and that while a patient in the hospital, McKellar called Watkins to her room and said, "Sign this." Watkins did not see McKellar write any part of the document; nor did she see McKellar sign her name, nor hear McKellar acknowledge signing the document. According to Watkins, McKellar did not tell her what the document was.
Another witness to the instrument, Luciane Brewer, stated that McKellar called her to McKellar's hospital room where McKellar handed Brewer one page to sign. She testified that in all McKellar had four or five pieces of paper, and that when she (Brewer) signed it, she saw no other names on the paper. Brewer's further testimony was that McKellar discussed the contents of the instrument with her but did not state that McKellar told her that McKellar had signed the instrument. Brewer did not read the instrument.
Lucille Jay testified that McKellar asked her to come to McKellar's room where McKellar said, "This is my Last Will and Testimony [sic]... ." Jay stated that when she signed the instrument as a witness, she didn't examine it but that Mrs. Brewer had already signed it when she, Jay, signed it.
The witness Watkins kept the controversial document until the day after the funeral when she opened the envelope containing the document.
The chancellor in his opinion held that the [P]urported will was not signed by the purported testatrix as is required by law and the cases in this jurisdiction. It is the opinion of this Court that the statements made to the witnesses by the purported testatrix did not carry with it any words signifying that the purported testatrix had signed the will.
Upon this record we cannot say that the decree against the purported Will was manifestly wrong or that the chancellor's finding was contrary to the law or the evidence. Careful analysis of the testimony establishes that none of the witnesses who testified stated that they saw or read or heard the entire document. None of the pages of the document except near the bottom of page five was signed by a witness, and McKellar's purported signature was at the top of *1275 page one. No testimony is in the record that any of the witnesses saw or observed McKellar either affix her signature on the document or heard her acknowledge that she had previously or at any time signed or affixed her signature to the document.
Under the case law of this state, the execution of a Will is a statutory privilege and not a constitutional or common law right. We have held many times that the intention of a testator is the paramount issue in the construction of Wills but one's intention does not become important nor the object of search by a court until there is first established a Will executed according to statutory requirements. Wilson v. Polite, 218 So.2d 843 (Miss. 1969). Wilson dealt with a purported Will wherein the testatrix did not sign (subscribe) at the bottom. Accordingly we held it not to be a valid holographic Will. In Wilson, there were no attesting witnesses to the purported Will, and it could not be valid as a non-holographic Will so it was a nullity. Wilson made the following pronouncement concerning a non-holographic or attested Will (the type now at issue):
[T]he name of the testator may be written at any place on the instrument, so long as it is declared to be his signature, and the instrument is published and signed in the presence of the witnesses.
Our statute applicable here is Mississippi Code Annotated § 91-5-1 (1972) which states in pertinent part that:
[S]uch last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction. Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix.
Kennard, et al v. Evans, et al, 218 Miss. 176, 65 So.2d 285 (1953) was concerned with a testamentary "revocation instrument" purporting to revoke the Last Will and Testament of a Mrs. Polk. The "revocation instrument" was held invalid in an opinion authored by Kyle, J. Excerpted from the Kennard opinion and pertinent here is the following language:
The controlling factor in this case, however, is that the evidence offered by the contestants to establish the proper execution of the alleged revocation was insufficient to show that the instrument had been executed by the testatrix and attested by the subscribing witnesses, in compliance with our own statute as construed by this Court.
.....
[S]ince Mrs. Polk did not sign the revocation instrument in the presence of Mrs. Easterling, it was necessary that Mrs. Polk inform Mrs. Easterling that the instrument which she was executing was a revocation of her will, and that the signature appended to it was her signature, and that she wrote it, or that Mrs. Polk make known to Mrs. Easterling in some way that the instrument was a revocation instrument and that she had signed it. Austin v. Patrick, 179 Miss. 718, 176 So. 714.
But the proof fails to show that Mrs. Polk did make known to Mrs. Easterling that the instrument was a revocation of her will, and from Miss Cochran's testimony it appears that Mrs. Easterling learned from Miss Cochran, and not from Mrs. Polk, that Mrs. Polk had signed the instrument.
We held in Batchelor v. Powers, 348 So.2d 776 (Miss. 1977) that "attested" means (1) the mental act of observation, and (2) the statutory manual act of subscription by attesting witnesses. It cannot be said that the purported Will before us was properly attested according to the evidence presented. Had the chancellor found that the purported Will was signed, attested and published in accordance with § 91-5-1, supra, and applicable case law, we would be hard put to say that such a finding was justified by the record. Upon this record we cannot say that the Will was properly executed, that is: signed, attested and published in accordance with the statute and therefore the lower court must be affirmed.
AFFIRMED.
*1276 PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.